UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CSX TRANSPORTATION, INC.,

       **Plaintiff,**

                                         **Case No. 15-10976**

**v.**

                                         **HON.DENISE PAGE HOOD**

**FIBER TECHNOLOGIES NETWORKS,
LLC, EAGLE 1 RESOURCES, LLC, and
UNDERGROUND CONTRACTORS, INC.,**

       **Defendants.**

_____/

## ORDER DENYING MOTION TO DISMISS [Docket No. 12]

### I.     INTRODUCTION

Before the Court is a Motion to Dismiss for Lack of Diversity Jurisdiction filed by Eagle 1 Resources, LLC ("Eagle 1") and Fiber Technologies Technologies Networks, L.L.C. ("Fibertech") [Docket No. 12, filed April 7, 2015]. Plaintiff CSX Transportation, Inc. ("Plaintiff") filed a Response in Opposition to Defendants' Motion [Docket No. 24, filed April 22, 2015]. Defendants filed a Reply to the Response [Docket No. 27, filed May 6, 2015]. The Court held a hearing on the Motion to Dismiss on June 17, 2015.

### II.    BACKGROUND

Plaintiff filed a four-count Complaint against Fibertech, Eagle 1, and Underground Contractors, Inc. ("UCI") (collectively, the "Defendants"). All four

claims are rooted in state law: (1) Count I – Common Law Trespass against all Defendants; (2) Count II - Common Law Ejectment against Fibertech and UCI; (3) Count III – Unjust Enrichment against Fibertech and UCI; and (4) Count IV – Determination of Interests in Land under MCL 600.2932.

Plaintiff alleges that it owns and operates a Plymouth, Michigan, rail yard (the "Railroad Property"), and Defendants trespassed upon the Railroad Property for the purpose of installing fiber optic cables and other material. Plaintiff has standard policies and permitting requirements for outside parties seeking to install utilities on, under, or over the Railroad Property. After Eagle 1 notified Plaintiff of the proposed installation by Fibertech, Plaintiff objected to the installation unless there was prior authorization and consent.

Plaintiff alleges that, on December 26, 2014, "Fibertech's contractor, UCI, or UCI's subcontractor knowingly and voluntarily entered upon Plaintiff's Railroad Property to attempt the unauthorized fiber optic cable installation and boring," without any such authorization or consent from Plaintiff. [Docket No. 1, Compl. ¶ 30]  When a Plaintiff employee discovered the Fibertech/UCI crew, he notified one of Plaintiff's signal managers. The signal manager ordered the Fibertech/UCI crew to stop installation and leave the property, and the Fibertech/UCI crew complied. None of the Defendants have been on the Railroad Property since December 26, 2014.

2

Plaintiff filed its Complaint on March 16, 2015, and it filed a motion for preliminary injunction the same day.  Shortly after the Court held a hearing on the motion for preliminary injunction on April 22, 2015, the Court entered an order the parties stipulated to that resolved the motion for preliminary injunction.  The April 29, 2015 Stipulated Order provided that the Defendants "and all other entities acting under their control or in concert therewith are prohibited from entering [the Railroad Property] and from undertaking any boring or other activities on, above or under that property without [Plaintiff]'s prior, express authorization and consent." [Docket No. 25, PgID 531]

## III.   LEGAL STANDARD

### A. Rule 12(b)(1) Motion

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction places the burden on the plaintiff to demonstrate that jurisdiction is proper. *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990).

> Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 235–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual

3

> allegations, *see Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d
> 320, 325 (6th Cir.1990), and the court is free to weigh the evidence
> and satisfy itself as to the existence of its power to hear the case.

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (emphasis in original).

*See also Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330

(6th Cir. 2007).  If at any point the court determines that it does not have subject

matter jurisdiction, it must dismiss the case. *See* Fed.R.Civ.P. 12(h) (3).

### B. Diversity Jurisdiction - 28 U.S.C. § 1332

To satisfy diversity jurisdiction pursuant to 28 U.S.C. § 1332, the district

court must be satisfied that the amount in controversy exceeds $75,000 and *"each*

defendant is a citizen of a different State from *each* plaintiff." *Owen Equipment &*

*Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)

(emphasis in original).  "The amount in controversy for federal diversity

jurisdiction purposes is determined as of the time the action is commenced.

Subsequent actions cannot divest the court of jurisdiction, once it has been

acquired."  *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976).

The burden is on Plaintiff to demonstrate that subject matter jurisdiction is proper

at the time the Complaint was filed.  *Moir,* 895 F.2d at 269; *Worthams*, 533 F.2d at

997.

### IV.   ANALYSIS

Fibertech and Eagle 1 argue that Plaintiff's cause of action should be dismissed for failure to satisfy the jurisdictional requirements of diversity jurisdiction.  In this case, it is undisputed that there is complete diversity of parties, but  Fibertech and Eagle 1 contend that Plaintiff failed to set forth allegations in the Complaint to support a finding that damages exceeded $75,000 at the time the Complaint was filed.

In the Complaint, the only direct allegations pertaining to <u>actual</u> damages are: (1) Paragraph 14, where Plaintiff states that the "Court has original subject matter jurisdiction over this civil action under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the value of $75,000.00, exclusive of interests and costs, and is wholly between citizens of different States," (2) Paragraph 42, where Plainitff states that, as a "result of Defendants' knowing, intentional, and continuing trespass of [the] Railroad Property, [Plaintiff] has been damaged in the form of loss or impaired use of the [Railroad] Property; attorneys' fees; litigation expenses; court costs; and other damages and expenses in an amount to be proved at trial," and (3) Paragraph 52, where Plaintiff alleges that it "is presumptively entitled to recover nominal damages as a matter of law as well as any actual damages caused by Defefendants' trespass proved at trial."

As Fibertech and Eagle 1 argue, the allegations in the Complaint do not facially demonstrate that the amount of actual damages is substantial or begins to

approach $75,000.00.  Nor has Plaintiff demonstrated that facts exist to support a finding that the actual damages are significant or exceed $75,000. As it relates to actual damages, Plaintiff alleges that Defendants began installing underground conduit on December 26, 2014 on the Railroad Property until their work was stopped by a CXST employee.  The damages caused by the installation of the underground conduit (and leaving the conduit on Railroad Property) appear to be the only actual damages alleged by Plaintiff.  Plaintiff has not claimed that the Defendants' trespass resulted in the Railroad Property being diminished and/or that the cost to repair or remediate the Railroad Property will be substantial or exceed $75,000.00.  As Plaintiff seems to acknowledge, the actual damages at this time may be "nominal." [Docket No. 1, Compl., ¶ 52]

The crux of Plaintiff's Complaint, however, is not the actual damages it had incurred at the time the Complaint was filed.  Rather, Plaintiff primarily filed this action to obtain injunctive relief, as the caption demonstrates ("Complaint for Injunctive Relief and Damages"). [Docket No. 1, PgID 1]  The allegations of the Complaint similarly demonstrate that Plaintiff is seeking injunctive relief.  For example, Plaintiff alleges in the Complaint that:

> a. Defendants' dangerous and unauthorized conduct "poses hazards to [Plaintiff]'s vital equipment and facilities that could jeopardize the safety of rail operations and the integrity of Plaintiff's track structure, which could lead to injuries to [Plaintiff]'s equipment, personnel or the public." Compl. ¶ 41.

6

b. "Defendants invasion of [Plaintiff]'s property rights is an injury in itself that is not capable of purely monetary compensation." Compl. ¶ 49.

c. Defendants' activities on the Railroad Property "create a substantial danger that [Plaintiff] will suffer catastrophic harms to its signal and communications systems and to continued safe and efficient railroad operations." Compl. ¶ 50.

d. Defendants' "actions also threaten to harm [the] public by disrupting [Plaintiff]'s service as a common carrier and by undermining the safety of [Plaintiff]'s rail operations." Compl. ¶ 51.

As it relates to the amount in controversy regarding the injunctive nature of this case, this Court applies the "either viewpoint" rule. *See, e.g., In re Cardizem CD Antitrust Litig.*, 90 F.Supp.2d 819, 834 (E.D. Mich. 1999) (Edmunds, J.). In *In re Cardizem*, the Court explained the "either viewpoint" rule:

> This rule serves the purpose of a jurisdictional amount in controversy requirement to keep trivial cases away from the federal court system. Because the jurisdictional amount was enacted primarily to measure substantiality of the suit, the question of whether the controversy is substantial should not be answered unqualifiedly by looking only to the value of that which the plaintiff stands to gain or lose. Under this "either viewpoint" approach, the Court considers the pecuniary result to either party and considers both the value to the plaintiff of conducting his personal affairs free from the activity sought to be enjoined and the costs of compliance the defendant will incur if the injunction is granted.

*Id.* at 834-835 (internal quotes and citations omitted).

Fibertech and Eagle 1 argue that Plaintiff cannot rely on the injunctive nature of relief in this case because there is no evidence that Defendants did or would go on the Railroad Property after being told to leave – and leaving – the

7

Railroad Property, without argument, on December 26, 2014. Fibertech and Eagle 1 argue: (1) they did not go on the Railroad Property between December 26, 2014 and March 16, 2015, when Plaintiff filed this action; (2) as John B. Messenger stated in his Declaration, on January 9, 2015 (two months before the Complaint was filed), he "made clear that Fibertech and its contractors would take no action to return to the [Railroad Property] or do any work on the site until the necessary permit was obtained" [Docket No. 11-3, PgID 230-31, ¶ 20]; and (3) Plaintiff's motion for preliminary injunction was resolved by the parties, without a decision by the Court, because Defendants stipulated to the injunctive relief Plaintiff sought.

The Court finds, however, that at the time the Complaint was filed, the injunctive relief Plaintiff sought was not resolved or moot. First, Defendants' stipulation that they would not enter upon the Railroad Property after Plaintiff filed the Complaint is irrelevant to the amount in controversy requirement, which is determined at the time the Complaint is filed. *See Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). Second, although Defendants did not go on the Railroad Property between December 26, 2014 and March 16, 2015, when Plaintiff filed the Complaint, and Mr. Messenger represents that he told Plaintiff that Defendants would not go on the Railroad Property without a permit, there was no written commitment or agreement to that effect (*e.g.*, an email from a Defendant representative, a stipulation, etc.) prior to the Complaint being filed. Third, it is

8

undisputed that Defendants previously had entered and begun work on the Railroad Property on December 26, 2014, even though Defendants had been advised by Plaintiff, in writing, that Defendants would have to go through Plaintiff's permitting process before doing so. For these reasons, the Court finds that Plaintiff could have believed, in good faith, that it was necessary to file a lawsuit seeking injunctive relief.

The Court now considers whether the value of the injunctive relief sought by Plaintiff would exceed $75,000. As Plaintiff notes, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cleveland Housing Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010). Plaintiff alleges that Defendants' dangerous and unauthorized conduct "poses hazards to [Plaintiff]'s vital equipment and facilities that could jeopardize the safety of rail operations and the integrity of Plaintiff's track structure, which could lead to injuries to [Plaintiff]'s equipment, personnel or the public." [Docket No. 1, Compl. ¶ 41] Plaintiff alleges that Defendants' conduct "create[s] a substantial danger that [Plaintiff] will suffer catastrophic harms to its signal and communications systems and to continued safe and efficient railroad operations." [Docket No. 1, Compl. ¶ 50]. *See also* Docket No. 1, Compl. ¶¶ 49, 51. The Court concludes that these allegations (which the Court must assume are true when

analyzing the allegations in the Complaint on their face) are sufficient to establish that the value of enjoining the Defendants' activities exceeds $75,000, such that the Court has subject matter jurisdiction. *See Gentek*, 491 F.3d at 330.

The Court also finds that Plaintiff has supplied sufficient factual evidence that Defendants' actions could jeopardize Plaintiff's signal network and could cause: (a) disruptions across the network; (b) damage to Plaintiff's trains and other equipment; (c) structural damage to Plaintiff's tracks; (d) disruptions to rail traffic; and (e) injuries to Plaintiff's personnel, Defendants' contractors, and the public at large, each of which alone could result in more than $75,000 in harm. [Docket No. 6-4, at ¶¶ 5, 11, 14; Docket No. 6-2, at ¶¶ 24, 26–27; Docket No. 24-2, at ¶ 9] Such a disruption could cause damage to D.E. 6-2 ¶¶ 26–27; D.E. 6-4 ¶¶ 11, 14. The Court further finds that, in the event of damage to the Railraod Property (including trains or structural damage or disruptions to rail traffic), Plaintiff's business reputation could be damaged in a substantial and, perhaps, incalculable manner. [Docket No. 6-4, at ¶ 6] *See Ill. Cent. R.R. Co. v. Bhd. of Maint. of Way Emps.*, 2015 WL 518677, at *6 (N.D. Ill. Feb. 5, 2015) (describing the "irreparable loss of goodwill and . . . future business" that "[e]ven a temporary shutdown" to a railroad would cause); *Brotherhood of Maint. of Way Emps. v. BNSF Ry. Co.*, 2003 WL 22844242, at *5 (N.D. Ill. Nov. 26, 2003). The Court concludes there is a factual basis for finding that the value to Plaintiff of obtaining the injunction exceeds

10

$75,000, such that the Court has subject matter jurisdiction. *See Gentek*, 491 F.3d at 330.

## V.    CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Motion to Dismiss for Lack of Diversity Jurisdiction filed by Eagle 1 Resources, LLC and Fiber Technologies Technologies Networks, L.L.C.'s [Docket No. 12] is **DENIED**.


       s/Denise Page Hood
       DENISE PAGE HOOD
       Chief Judge, United States District Court

DATED: March 28, 2016